IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST REINSURE, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-2315-E |
| | § | |
| COMFORT AUTO GROUP USA, | § | |
| LLC, HESHY GOTTDIENER, AND | § | |
| TOBE GOTTDIENER, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is plaintiff Southwest Reinsure, Inc.'s Motion for Default Judgment (Doc. 22). Having considered the motion, the record, and applicable law, the Court finds the motion should be granted.

**BACKGROUND**

Southwest Reinsure, Inc. (Southwest) brings this diversity action against defendants Comfort Auto Group USA, LLC, Heshy Gottdiener, and Tobe Gottdiener to enforce Southwest's rights under a promissory note and guaranty (Doc. 9). On December 3, 2020, after numerous unsuccessful attempts to serve defendants with process, the Court granted Southwest's motion to serve defendants by publication (Doc. 12). Southwest served defendants by publication in the Rockland County Times and Dallas Morning News on December 17, 2020, December 24, 2020, December 31, 2020, and January 7, 2021 (Doc. 18). Accordingly, defendants were effectively served with process by publication on or before January 7, 2021, and the time for them to file an answer or otherwise appear in this action

1

was January 28, 2021. *See* FED. R. CIV. P. 12. To date, defendants have not filed an answer or otherwise appeared in this action. On February 19, 2021, Southwest filed a Request for Clerk's Entry of Default, and the District Clerk entered a default against defendants the following day (Docs. 18 & 19). Southwest now moves the Court to enter a default judgment.

## LEGAL STANDARDS

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, ... the clerk must enter the party's default." FED. R. CIV. P. 55(a). Once default has been entered, the plaintiff may apply to either the clerk or the district court for a default judgment. FED. R. CIV. P. 55(b).

Here, defendants were effectively served with process by publication on or before January 7, 2021, with notice being given to the Court on February 10, 2020 (Docs. 16 & 17). Because defendants failed to file any answer, motion, or otherwise defend against this action, the Clerk entered default pursuant to Rule 55(a) on February 19, 2021 (Doc. 19). On March 3, 2021, Southwest moved for default judgment against defendants pursuant to Rule 55(b) (Doc. 22). Accordingly, Southwest has followed the proper procedures under Rule 55.

## APPROPRIATENESS OF DEFAULT JUDGMENT

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A court must first determine whether a default judgment is appropriate under the circumstances, considering "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly

2

established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In light of defendants' failure to respond to the complaint, there are no material issues of fact. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("defendant, by his default, admits ... plaintiff's well-pleaded allegations of fact"). Defendants' failure to appear in this action has resulted in substantial prejudice because Southwest has been unable to receive expeditious relief. There is no evidence that defendants' failure to respond or otherwise defend against this action is the product of a good faith mistake or excusable neglect. Defendants' failure to respond, despite having proper service and notice, also weighs against a finding that default judgment is overly harsh. And the Court finds no good cause obligating it to set aside the default if challenged by defendants. Having considered the relevant factors, the Court finds entry of default judgment is appropriate at this time. *See Lindsey*, 161 F.3d at 893.

### SUFFICIENT BASIS IN THE PLEADINGS

Next, a court must assess the merits of a plaintiff's claims and find sufficient basis in the pleadings for a default judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206. In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *See id.* Although a defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."

3

Southwest's Second Amended Complaint sets forth the following factual allegations, which are deemed admitted due to defendants' failure to answer:

1. On June 14, 2019, defendant Comfort Auto Group USA, LLC (Borrower) executed and delivered a Promissory Note (Note) in the amount of $1,800,000 to Southwest;[1]

2. On June 14, 2019, defendants Heshy Gottdiener and Tobe Gottdiener (Guarantors) executed and delivered to Southwest a Guaranty, wherein they guaranteed payment of all amounts required under the Note;[2]

3. Borrower defaulted on the Note by failing to comply with repayment obligations;

4. On July 10, 2020, Southwest provided written notice of the default to Borrower and Guarantors and demanded payment;

5. Borrower and Guarantors did not make any payment after the notice of default;

---

[1] Under the Note, a copy of which is included in the Appendix to Southwest's Motion for Default (Doc. 23, p. 6), Borrower was to pay minimum monthly payments of $53,947,61 each month until the loan was paid in full. The Note defines an "event of default" as:

> "[f]ailure to pay this Note or any installment of principal when due in accordance with the terms of this Note … shall give Lender the rights to accelerate this Note, at which time the principal then remaining unpaid shall at once become due and payable. Any amount of outstanding principal or interest hereunder which is not paid when due, whether at stated maturity, by acceleration, or otherwise, shall bear interest payable on demand at the default rate of interest equal to the lesser of (i) fifteen percent (15%) per annum, or (ii) the highest rate permitted to be charged or collected by applicable law.

(*Id.*).

[2] Under the Guaranty, Guarantors "absolutely and unconditionally guarantee[d], as primary obligor and not as surety, the full and punctual payment (whether at stated maturity, upon acceleration or early termination or otherwise, and at all times thereafter) and performance of the payment of the Borrower."   (Doc. 23, p. 12).

4

6. Southwest has suffered damages of $1,761,817.23 as of July 10, 2020, exclusive of any interest, attorney's fees, costs or expenses;

7. All conditions precedent to Southwest's right to maintain suit have either been performed, satisfied, or waived; and

8. Southwest retained a law firm to protect and enforce its rights under the Note and Guaranty and agreed to pay the firm reasonable and necessary attorneys' fees, costs, and expenses.

(Doc. 9).

Southwest's suit on the Note and Guaranty are essentially breach of contract claims. To prevail on its claims under Texas law, Southwest must prove the following elements: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (internal quotations and citations omitted); *USAA Texas Lloyds Co v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018).

Southwest has sufficiently pleaded each of the elements of its claims. The undisputed facts in the Second Amended Complaint demonstrate that Borrower is in default under the Note and Guarantors are in default under the Guaranty. As Borrower and Guarantors have failed to file an answer in this action or otherwise appear, they have accepted these well-pleaded allegations as true. Accordingly, liability is established as a matter of law. The Court, therefore, **GRANTS** Southwest's motion as it relates to its request for default judgment against Borrower and Guarantors.

#### DAMAGES

"A default judgment is a judgment on the merits that conclusively establishes the Defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages may not be awarded "without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). If the amount of damages can be "determined with certainty by reference to the pleadings and supporting documents," and where a hearing would reveal no pertinent information, "the court need not jump through the hoop of an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310–11 (5th Cir. 1993).

Southwest has not requested a hearing and included in its Appendix the Declaration of William J. Bigley, Southwest's Senior Vice President, Accounting, from which the Court may calculate damages. Bigley's Declaration and attachments in support show Southwest is owed $1,749,987.29, which represents the outstanding principal amount of $1,671,740.51 on the Note and unpaid accrued interest of $78,246.75 as of February 1, 2021 (Doc. 23. p. 4). Accordingly, the Court awards Southwest $1,749,987.26 in actual damages; $1,671,740.51 for principal owed on the Note as of February 1, 2021, and $78,246.75 for accrued and unpaid interest owed as of February 1, 2021.

The Note provides that it "shall be repaid with interest at Five Percent (5%) per annum" (Doc. 23, p. 6). According to Bigley's Declaration, interest on the Note will continue to accrue at $232.19 per day beginning February 1, 2021 (Doc. 23). The Court, applying the contractual rate, awards prejudgment interest on the principal and accrued

interest as of February 1, 2021, at a rate of $232.19 per diem from February 2, 2021, to June 14, 2021 ($30,881.27).

Postjudgment interest on money judgments recovered in federal district court, including in an action based on diversity of citizenship, is governed by 28 U.S.C. § 1961. *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993) (citation and internal quotation marks omitted); *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991). Accordingly, pursuant to section 1961(a), the Court awards postjudgment interest at the current federal rate of 0.05% per annum.

### ATTORNEY'S FEES AND COSTS

Pursuant to the Note and Guaranty, Southwest also requests an award for attorney's fees and costs that it incurred with respect to its claims. The Note provides that "[i]f [it] is not paid when due, whether at maturity or through acceleration, or if it is collected through … court, whether at maturity or through acceleration, the Borrower agrees to pay all costs of collection incurred by the holder thereof, including but not limited to reasonable attorney's fees" (Doc. 23, p. 6). The Guaranty provides that "the Guarantor agrees to pay all costs and expenses including, without limitation, any court costs and attorneys' fees and expenses paid or incurred by the Lender … in endeavoring to collect all or any part of the Guaranteed Obligations from, or in prosecuting any action against, the Borrower, the Guarantor or any other guarantor on all or any part of the Guaranteed Obligations" (Doc. 23, p. 12).

"Under Texas law, when a prevailing party in a breach of contract suit seeks fees, an award of reasonable fees is mandatory, as long as there is proof of reasonable fees." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461–62 (5th Cir. 2002). "There is, however, discretion to

7

determine the amount of the fee." *Id.* A court may award reasonable attorney's fees and costs without a hearing if the fees can be "computed with certainty by reference to the pleadings and supporting documents alone." *James,* 6 F.3d at 311 (citation omitted).

Consistent with Texas law, the Court uses the "lodestar method," a "short hand version" of the *Arthur Andersen* factors,[3] to determine reasonable and necessary attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496, 498 (Tex. 2019). The Court first determines the reasonable hours spent by counsel and the reasonable hourly rate for counsel's work. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Then, the Court multiplies the number of reasonable hours counsel worked by the applicable rate to determine the lodestar, which is presumed to reflect the reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 499. The Court may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary. *Id.* at 500–01.

The party seeking attorney's fees has the burden to provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Id.* at 498. "Sufficient

---

[3] These factors for determining whether an award of attorney's fees is reasonable are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood … that the acceptance of the particular employment will preclude other employment for the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citation omitted).

evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed the services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each attorney performing the services." *Id.*

Southwest has established, by the Declaration of Jason R. Marlin, Southwest's attorney and a partner with the law firm of Locke Lord LLP, the hours worked and rates charged by its attorneys.[4] These fees total $31,475. Southwest also has incurred costs of $4,774.42. Marlin, who has been licensed to practice law since 2005, attests that he is familiar with the usual and customary fees charged in Texas for legal services rendered in cases such as this one and is familiar with the work done to prosecute Southwest's claims. He considered the *Arthur Anderson* factors in connection with his testimony, and based on those factors, his experience, and the circumstances of this case, it is his opinion that the attorney's fees and costs incurred were reasonable and necessary and the amounts charged were reasonable. The Court finds that these rates are customary in the community and the fees and costs requested are reasonable and were reasonably necessary to prosecute this

---

[4] According to the Declaration, Marlin spent 28 hours (at an hourly rate of $450), attorney Anna K. Finger spent 35 hours (at an hourly billing rate of $350), and paralegal Sandra Adams spend 15 hours (at an hourly billing rate of $200) to complete the following tasks: a) conferring with Southwest regarding factual background and strategy; b) reviewing Southwest loan documents and communications; c) drafting the Original Complaint, First Amended Complaint, and Second Amended Complaint; d) monitoring the bankruptcy filings of defendant's related entities; e) attempting to obtain service of process on defendants; f) researching service of process issues; g) researching and drafting a motion for alternative service of process; h) researching and drafting a motion for service via publication; i) obtaining service of process via publication; j) researching default judgment issues; k) drafting a request for clerk's entry of default; and l) drafting a motion for default judgment. Southwest also incurred $3,625 appearing in and monitoring a Chapter 11 bankruptcy proceeding filed by Borrower in the Eastern District of New York, Brooklyn Division, Case 1-20-42730-nhl. The bankruptcy matter was dismissed after defendant Heshy Gottdiener failed to appear before the court in violation of the court's order.

action. Accordingly, Southwest is entitled to an award of attorney's fees and costs in the amount of $36,249.42.

## CONCLUSION

For the reasons above, Southwest's Motion for Default Judgment (Doc. 22) is **GRANTED**. It is **ORDERED** that default judgment be entered for Southwest in the amount of (1) $1,749,987.29 in actual damages; (2) $30,881.27 in prejudgment interest on the principal and accrued interest as of February 1, 2021; and (3) $36,249.42 in reasonable attorney's fees and costs. The Court also awards postjudgment interest at the applicable federal rate of 0.05%. In accordance with Rule 58 of the Federal Rules of Civil Procedure, a default judgment will issue by separate document.

**SO ORDERED** this 14th day of June, 2021.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE

10